UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIA B.,

    Plaintiff,

v.                                                                                  Hon. Sally J. Berens

COMMISSIONER OF                                    Case No. 1:24-cv-681
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed a protective application for DIB on June 29, 2022, alleging that she became disabled as of June 1, 2021, due to post-traumatic stress disorder (PTSD), anxiety, paranoia, bipolar disorder, depression, and high cholesterol. (PageID.88, 282–86.) Plaintiff was age 47 at the time of her alleged onset date and age 48 when she filed her application. (PageID.88.) She had completed the ninth grade and had past work as a hospital cleaner, an agricultural produce sorter, and a quality control technician. (PageID.50, 314.) Plaintiff's application was denied

2

initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

ALJ Adam Dale conducted a telephone hearing on February 5, 2024, and received testimony from Plaintiff and Guy Hostetler, an impartial vocational expert (VE). (PageID.60–85.) On March 8, 2024, the ALJ issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (PageID.38–52.) The Appeals Council denied Plaintiff's request for review on April 29, 2024 (PageID.22–24), making ALJ Dale's March 8, 2024 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on July 1, 2024.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his or her residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through December 31, 2026, and had not engaged in substantial gainful activity since her alleged onset date of June 1, 2021, the ALJ found that Plaintiff suffered from severe impairments of bipolar disorder; recurrent major depressive disorder (MDD); PTSD; unspecified personality disorder; somatic symptom disorder; tardive dyskinesia; hypertension; benign paroxysmal position vertigo; mild C6 radiculopathy of the right upper extremity; migraines; and nodules of the right lung, severe impairments that, considered alone or in combination, did not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.40–43.)

The ALJ then determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

4

> [S]he can frequently push, pull, or operate hand controls with her right upper extremity; she cannot climb ladders, ropes, or scaffolds; she can occasionally crawl; she can frequently balance, stoop, kneel, crouch, or climb ramps or stairs; she can frequently handle objects with her right upper extremity; she cannot work in an environment with concentrated exposure to atmospheric conditions such as fumes, noxious odors, dusts, or gases; she cannot work in extremes of heat, around vibration, at unprotected heights, or around moving mechanical parts; she cannot operate vibrating hand tools with her right upper extremity; she can work in "moderate" levels of noise as defined by the Selected Characteristics of Occupations (SCO); the claimant can perform simple tasks, as well as make simple work-related decisions; she cannot work at a production rate pace (e.g. assembly line work); she can adapt to occasional changes in her work routine or job tasks; and she can occasionally interact with supervisors and coworkers, but not the public.

(PageID.43–44.)

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a hospital cleaner as actually performed but not as generally performed. (PageID.50.) The ALJ also made alternative step-five findings based on testimony from the VE that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of mail sorter, garment sorter, and stock checker, apparel, approximately 436,150 of which existed in the national economy. (PageID.51.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (noting that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff had not been disabled during the period at issue.

## Discussion

Plaintiff raises three errors on appeal: (1) the RFC assessment is not supported by substantial evidence where it fails to account for all symptoms and limitations resulting from Plaintiff's vertigo; (2) the ALJ erred as a matter of law by failing to properly evaluate whether Plaintiff's migraine headaches medically equaled listing 11.02B; and (3) the ALJ erred as a

5

matter of law by failing properly to evaluate the supportability and consistency of the medical opinion of Dr. Bow and by improperly rejecting this medical opinion, in violation of 20 C.F.R. §§ 404.1520c.

## I.    Vertigo Symptoms

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* Social Security Ruling 96-8P, 1996 WL 374184 at *1 (July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3). The ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

Plaintiff contends that the ALJ's RFC for light work, with limitations of frequent balancing, stooping, kneeling, or crouching, exceeds her ability to work both her past relevant work as a hospital cleaner and the light jobs the ALJ identified at his step-five finding because it fails to account for her vertigo symptoms. (ECF No. 8 at PageID.811–12.) Plaintiff reported vertigo symptoms to her providers throughout the period at issue. On June 3, 2021, Plaintiff reported that her symptoms began two weeks ago and that the problem was "mild-moderate" and occurred intermittently. She described it as being "light-headed." Plaintiff reported that she had experienced the issue before and it had resolved with medication. (PageID.477.) In July 2021,

Plaintiff reported to Dr. Bow, her primary care physician, that the problem had persisted for eight weeks and was of moderate severity. She said that the Meclizine he had prescribed was not helping. Plaintiff described the problem as an "imbalance, severe and spinning," and said that it was aggravated by bending, getting out of bed, rapid movement, rapid rise, and turning. Dr. Bow suspected benign paroxysmal positional vertigo (BPPV) and ordered physical therapy for vestibular training. (PageID.472.) Plaintiff next reported the problem in March 2022. Dr. Bow noted that Plaintiff was mildly orthostatic, which may be contributing to her vertigo, and decreased her Losartan to 50 mg daily. (PageID.457.) The next month, Plaintiff reported that her symptoms were moderate but improving and that they occurred intermittently. She again described the symptoms as being light-headed and spinning. Aggravating factors included bending, rapid movement, rapid rise, and rolling over in bed. Her lightheadedness improved with the decreased dosage of Losartan. (PageID.451–52.)

In 2023, Dr. Bow referred Plaintiff to ENT specialist Dr. Lemonnier, who examined Plaintiff on May 11, 2023. Plaintiff reported that her symptoms were episodic but consistently occurred on a daily basis for the past six months. Plaintiff said that she feels dizzy all of the time, both at rest and with movement, but experiences frank episodes of vertigo, which can last for hours or days. Plaintiff said that these episodes caused her to feel out of sorts and that her vision would blur and she would start to spin. The episodes were not positional and could occur when she was sitting still, driving a car, or in bed. Dr. Lemonnier observed that Plaintiff's history was inconsistent with BPPV alone, and she suspected that Plaintiff may suffer from vestibular migraine. Dr. Lemonnier ordered a videonystagmography (VNG) and an audiogram to rule out a peripheral etiology. (PageID.678–89.) Around this same time, Plaintiff reported to Dr. Bow that the severity of the problem was moderate but that it was improving. (PageID.686.) Plaintiff

7

returned to Dr. Lemonnier on June 29, 2023, and reported relief for about a week from an Epley maneuver Dr. Lemonnier had performed, but she then started to experience episodes of spinning dizziness when in the heat and cold. (PageID.671.) On July 21, 2023, Plaintiff reported that her last dizzy spell occurred in May 2023 and lasted four days. She said that during a spell, she experiences nausea, lightheadedness, feeling off balance, and has fainted. She also reported often having to grab something to steady herself until the dizziness passes. (PageID.692.) The audiogram results indicated normal hearing and the VNG results indicated that Plaintiff's dizziness was likely central in origin and unrelated to the ear. Dr. Lemonnier ordered an MRI of the brain to assess vestibular migraine as the cause of Plaintiff's dizziness. (PageID.710.) The MRI produced no significant findings and normal results. (PageID.748.)

In assessing Plaintiff's RFC, the ALJ recognized Plaintiff's complaint that her vertigo was "a daily battle" and that she did not bend down or look up and tried to stay as straight as possible. (PageID.45.) The ALJ also noted the lack of objective evidence to verify the severity of Plaintiff's subjective complaints. (PageID.46.) The ALJ also found Plaintiff's subjective complaints only "partially consistent with the overall medical evidence in light of generally normal objective physical examination findings that included normal balance and gait. (PageID.47 (citing, among others, PageID.442, 734).) As Plaintiff recognizes, no medical source opined about limitations resulting from her vertigo.[2] Nonetheless, the ALJ included vertigo-related limitations, including no climbing of ladders, ropes, or scaffolds, no more than frequent

---

[2] To the extent Plaintiff asserts that the ALJ needed a medical opinion to support his RFC finding, this argument lacks merit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (stating that "to require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (internal quotation marks omitted)).

balancing, stooping, kneeling, crouching, or climbing of ramps or stairs, and no work at unprotected heights, all of which were consistent both with Plaintiff's reported activities and her statements in her Adult Function Report, in which she denied limitations in lifting, squatting, bending, standing, walking, or climbing stairs. (PageID.44, 47, 334.) The ALJ's RFC determination is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted). Here, because substantial evidence supports the ALJ's RFC finding and his decision indicates that he considered the record as a whole, he acted within the "zone of choice" and his finding must be accepted as conclusive. Therefore, this claim of error is rejected.

## II.     Migraine Headaches

Plaintiff contends that the ALJ erred in evaluating whether her migraines medically equaled listing 11.02(B). At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii). The claimant bears the burden of demonstrating that she meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (italics in original). An ALJ follows the analytical process for evaluating equivalence at step three set forth in Social Security Ruling 17-2p. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017).

There is no specific listing for primary headache disorder. The Social Security Administration has issued specific guidance for headache disorders. *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). An ALJ evaluates a headache disorder at step three by determining whether, "alone or in combination with another impairment(s), [it] medically equals a listing." *Id.* at *7. The ruling notes that listing 11.02 for epilepsy is the most closely analogous listed impairment for headache disorders, explaining that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." *Id.* The ruling also sets forth the proper analysis under paragraph B:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* (citing 20 C.F.R. Part 404, Subpt. P, App. § 11.02 (Mar. 14, 2018)).

The ALJ articulated his consideration of whether Plaintiff's migraines equaled listing 11.02 as follows:

> I evaluated the claimant's migraines under listing 11.02 for epilepsy and determined that the medical evidence did not support medical equivalence. (SSR 19-4p). The record does not demonstrate that the claimant experienced headaches that were equivalent in severity to experiencing tonic-clonic seizures at least once a month for at least three consecutive months; dyscognitive seizures occurring at least once a week for at least three consecutive months; tonic-clonic seizures occurring at least once every two months for at least four consecutive months, with marked limitation in physical functioning, or any of the four broad areas of mental functioning; or dyscognitive seizures occurring at least once every two weeks for at least three consecutive months, with marked limitation in physical

> functioning, or in any of the four broad areas of mental functioning. The record does not show that the claimant's migraine headaches resulted in any seizure activity or caused marked limitation in physical functioning or any of the four broad areas of mental functioning. Moreover, I note that no medical consultant or medical expert has opined that the claimant's impairments meet or medically equal this, or any other listing; and, as noted below, all related diagnostic testing and imaging results were normal. (9F/4; 11F/1; 14F/24-26).

(PageID.43.)

Plaintiff contends that the ALJ applied the wrong legal standard because he erroneously focused on the absence of medical evidence of actual seizure activity. In other words, Plaintiff contends that the ALJ erroneously required Plaintiff to *meet* rather than *equal* listing 11.02(B). Plaintiff further contends that the ALJ erred by conflating the elements of listing 11.02(D) with those for listing 11.02(B) by grafting marked limitations in the four broad areas of mental functioning, found in listing 11.02(D) but not in 11.02(B), onto his listing 11.02(B) analysis. Plaintiff argues that these errors were not harmless because the record contained sufficient evidence that her migraine symptoms equaled the severity of dyscognitive seizures and met the frequency requirements (at least once a week for three consecutive months), and that Plaintiff experienced such symptoms despite her medication compliance, to support equivalency under listing 11.02(B). (ECF No. 8 at PageID.814–18.)

Defendant did not respond to these arguments. Nonetheless, they are not persuasive. First, this is not situation in which the ALJ failed to consider Plaintiff's migraines at step three under the appropriate agency guideline and listing. The ALJ said that he evaluated Plaintiff's migraines under listing 11.02, cited SSR 19-4p, and determined that the medical record lacked evidence to demonstrate that Plaintiff's migraines were "equivalent in severity" to any of the requirements under listing 11.02(A)–(D). (PageID.42.) Given the ALJ's non-equivalency finding, it is unclear why he mentioned lack of evidence of seizures. In any event, even if the ALJ erred by applying the incorrect standard, the evidentiary record does not satisfy the

11

requirements of SSR 19-4p because it lacks a detailed description of a typical headache event from an acceptable medical source who has observed the event. *See Jamie Marie V. v. O'Malley*, No. 1:23-cv-03047, 2024 WL 4063557, at *10 (E.D. Wash. Sept. 5, 2024) (holding that the plaintiff did not meet the requirements for equivalence under listing 11.02 because she did not "dispute the ALJ's determination that the record does not contain a detailed description of a headache event from a provider who has observed at least one such event"); *Dickerson v. Kijakazi*, No. 5:22-cv-23, 2023 WL 6014378, at *4 (S.D. Miss. July 31, 2023), *report and recommendation adopted*, 2023 WL 5487355 (S.D. Miss. Aug. 24, 2023) ("[S]ignificantly here, the record lacks an observation of a typical headache event by an acceptable medical source detailing the event and all associated phenomena."); *Reynolds v. Kijakazi*, No. 1:21CV199, 2022 WL 1241646, at *12 (M.D.N.C. Apr. 27, 2022) (finding that the plaintiff failed to meet the requirements of SSR 19-4p, in part, because the record lacked a detailed description of a typical headache event by a provider who observed the event, and holding that the plaintiff's own subjective allegations alone could not establish that the plaintiff equaled the requirements of listing 11.02(B)). All of the evidence Plaintiff cites reflects only her subjective descriptions of her headaches, rather than observations from a medical provider who has observed a typical headache event. Given this lack of evidence from a medical provider, the ALJ properly determined that the record failed to support medical equivalence under listing 11.02(B).

As noted, Defendant did not respond to the Plaintiff's foregoing arguments; instead, Defendant contends that substantial evidence supports the ALJ's non-equivalency finding because, as the ALJ observed, no doctor opined that Plaintiff's impairments, including migraines, meet or medically equal a listing. Indeed, pursuant to SSR 17-2p, an ALJ may find medical equivalence only if the record contains one of the following:

> A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
>
> A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

SSR 17-2p, 2017 WL 3928306, at *4.

Plaintiff does not dispute that the record lacked a medical opinion on equivalence, but she argues in reply that the ALJ should have obtained a medical opinion if he was considering finding that Plaintiff's migraines equaled listing 11.02(B). (ECF No. 10 at PageID.843.) This argument fails on two grounds. First, nothing in the ALJ's decision or elsewhere in the record indicates that he was considering finding that Plaintiff's migraines met listing 11.02(B). Second, the argument is essentially that the ALJ failed in his duty to develop the record, which Plaintiff should have raised in her opening brief. Nonetheless, even if Plaintiff had raised the argument, it would fail because under *Moats v. Commissioner of Social Security*, 42 F.4th 558, 563–64 (6th Cir. 2022), there were no "extreme circumstances" imposing a "special duty" on the ALJ to develop the record. Here, Plaintiff was represented by an attorney throughout the hearing-level process, including at the hearing itself (PageID.60), and there is no indication that Plaintiff was unable to comprehend the proceedings or articulate her thoughts in her testimony. *See Robin H. v. O'Malley*, No. 3:24-CV-00095, 2025 WL 627522, at *6–7 (W.D. Ky. Feb. 26, 2025) (rejecting the plaintiff's argument that the ALJ failed to develop the record by obtaining a medical opinion evaluating the plaintiff's migraines for medical equivalence under listing 11.02 because the plaintiff failed to show that her circumstances presented an "extreme" situation under *Moats*). Thus, the ALJ was not required to obtain a medical opinion.

Accordingly, Plaintiff fails to demonstrate error warranting remand.

### III. Evaluation of Dr. Bow's Opinion

Last, Plaintiff contends that the ALJ erred in evaluating the opinion of Plaintiff's primary health provider, Daniel Bow, D.O. In articulating Plaintiff's RFC, the ALJ evaluated the opinion evidence pursuant to 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. *See* 20 C.F.R. § 404.l520c(b)(2) and (3). The regulation explains "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

The ALJ is to conduct this analysis with regard to all medical source opinions and prior administrative findings but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[,] no longer

14

applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

Dr. Bow completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on July 26, 2022. (PageID.419–21.) The ALJ evaluated this opinion as follows:

> In July 2022, the claimant's primary care provider, Dr. Bow, completed a medical assessment statement regarding the claimant's mental ability to complete work related activities and detailed a similar opinion in his treatment notes on the same date. In his treatment notes, Dr. Bow opined, "I do not feel she is fit to continue working (she has a history of not being able to maintain work), so her disability paperwork was filled out." (3F/1). In his medical assessment statement, Dr. Bow opined the claimant had the ability to understand, remember, and carry out simple instructions; and make simple work-related decisions; but, due to her "bipolar disorder, her mood significantly affects her ability to process and carry out complex tasks." He said the claimant's ability to interact appropriately with the public and supervisors was only mildly impaired, while her ability to interact with co-workers and respond appropriately to usual work situations and changes in a routine work setting were extremely impaired. Dr. Bow stated that the claimant is easily triggered, doesn't respond well to change, her bipolar disorder severely affects her interaction with coworkers, and her paranoia limits her interaction with coworkers. Dr. Bow further opined the claimant has severe difficulties adapting that can affect her concentration. He also stated the claimant would be absent from work more than four days per month, and she would likely be off task 25% or more of a typical workday. (2F). I find Dr. Bow's opinions partially persuasive. Dr. Bow's treatment notes support some of his opinions, including the claimant's struggles with bipolar disorder that could reasonably affect her ability to perform complex tasks and make complex work-related decisions, which are consistent with the evidence of record. (3F; 7F; 10F). However, Dr. Bow's opinions regarding extreme adaptation and interaction limitations, as well as absences and off task behaviors, are not supported by his own documented findings, including the limited and conservative nature of the claimant's treatment throughout the

>relevant period. These opinions are also inconsistent with the limited medical evidence of record, which contains largely normal findings. Additionally, Dr. Bow and other providers consistently noted the claimant was cooperative and pleasant, and had appropriate affect, behavior, and mood. (3F/6, 17, 19, 26, 30, 37, 42, 47, 52, 56; 6F; 9F/5, 13; 13F/1, 3: 14F/5, 11, 16, 22).

(PageID.48.)

Plaintiff asserts that the ALJ's evaluation of Dr. Bow's opinion is "seriously flawed" because he mischaracterized Dr. Bow's medical records, which, she claims, reflect Plaintiff's difficulty functioning and ongoing symptoms of her anxiety and depression. Plaintiff's argument is not well taken. While Plaintiff cites her own descriptions to her providers of her mental impairment symptoms (PageID.425, 428, 468–69, 482–83, 692, 719, 731, 733), the ALJ relied on, and accurately characterized, largely normal objective mental status examinations throughout the record. (PageID.442, 449, 453, 460, 465, 470, 475, 479, 615–16, 672, 680, 719, 721, 728, 734, 739, 745.) The ALJ's reliance on this evidence, rather than Plaintiff's subjective complaints, to evaluate Dr. Bow's opinion was appropriate. *See Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *1 (6th Cir. Apr. 30, 2018) ("relatively normal" mental status examinations, among other considerations, were a proper basis to discount the treating psychiatrist's opinion); *O'Connell v. Comm'r of Soc. Sec.*, No. 16-1392, 2017 WL 4570466, at *2 (6th Cir. Feb. 27, 2017) (same).

Finally, Plaintiff contends that, had the ALJ properly evaluated Dr. Bow's opinions regarding Plaintiff's ability to interact appropriately with co-workers and respond appropriately to usual work situations and changes in a routine work setting, the VE's testimony would have supported a finding of disability. However, an ALJ is not required to accept a VE's testimony responding to a hypothetical that contained a limitation the ALJ found unsubstantiated. *See Rudd*, 531 F. App'x at 730. Thus, this claim of error lacks merit.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: April 16, 2025         /s/ Sally J. Berens
                              SALLY J. BERENS
                              U.S. Magistrate Judge